## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## GREENVILLE DIVISION

|  |  |  |
|---|---|---|
| Joseph Mason, | ) | Civil Action No. _____ |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| vs. | ) | **COMPLAINT** |
|  | ) |  |
| Five Star Carbide, LLC; RANN | ) |  |
| Products, LLC; ARC Global | ) |  |
| Holdings, Inc.; Afzaal Mir, | ) | **Jury Trial Requested** |
| individually; Jerry Saad, individually; | ) |  |
| and Larry McKinney, individually, | ) |  |
|  | ) |  |
| Defendants. |  |  |

Plaintiff Joseph Mason ("Plaintiff"), by way of his Complaint in the above-captioned matter, would allege and show unto this Honorable Court the following:

### NATURE OF THE ACTION

1.    Plaintiff brings this action, as an employee of Defendants misclassified as an independent contractor, to remedy violations of the South Carolina Payment of Wages Act, South Carolina Code Ann. § 4110-10, *et seq*. ("SCPWA").

2.    Plaintiff also brings this action to remedy his wrongful termination in violation of public policy of the State of South Carolina, namely retaliatory termination by Defendants for asserting his rights under the SCPWA.

3.    Plaintiff also brings this action, in the alternative, to remedy violations of S.C. Code Ann. § 39-65-20 for Defendants' failure to remit commissions owed to him.

1

4.    Plaintiff further brings this action to remedy violations of the Wire and Electronic Communications Interception Act ("Wiretap Act"), 18 U.S.C. § 2510, *et seq*., for the contemporaneous and unauthorized interception of his personal emails by Defendants, who were not parties to, nor intended recipients of, the emails.

5.    Plaintiff also brings this action to remedy violations of the South Carolina Homeland Security Act ("SC Wiretap Act"), S.C. Code Ann § 17-30-10 *et seq.*, for the contemporaneous interception of his personal emails by Defendants, who were not parties to, nor intended recipients of, the emails.

6.    Plaintiff also brings this action to remedy violations of South Carolina common law for invasion of privacy and wrongful intrusion into his private affairs.

7.    Plaintiff also brings this action for equitable relief for unjust enrichment/quantum meruit.

## PARTIES, JURISDICTION, AND VENUE

8.    Plaintiff is a citizen and resident of Buncombe County, North Carolina. Plaintiff was employed as a Sales Engineer for Defendants until approximately September or October 2020.

9.    Defendant Five Star Carbide, LLC (individually herein, "FSC") is a limited liability company organized and existing pursuant to the laws of the State of South Carolina, with its principal place of business in Greenville, South Carolina. FSC conducts its business in both South Carolina and North Carolina.

10.    Defendant RANN Products, LLC (individually herein, "RANN") is a limited liability company organized and existing pursuant to the laws of the State of South

Carolina, with its principal place of business in Greenville, South Carolina. RANN conducts its business in both South Carolina and North Carolina.

11.    Upon information and belief, Defendant ARC Global Holdings, Inc. (individually herein, "ARC") is a corporation formed under the laws of a State other than South Carolina, North Carolina or Delaware, with its principal place of business in Spartanburg, South Carolina. ARC conducts its business across the United States of America, but primarily in South Carolina and North Carolina.

12.    Upon information and belief, Defendant Afzaal Mir (individually herein, "Mir") is domiciled in Greenville County, South Carolina.

13.    Upon information and belief, Defendant Jerry Saad (individually herein, "Saad") is domiciled in South Carolina.

14.    Upon information and belief, Defendant Larry McKinney (individually herein, "McKinney") is domiciled in Greenville, South Carolina.

15.    Mir, in his capacity as Chief Executive Officer of FSC, RANN and ARC, exercises a high level of control over the South Carolina Payment of Wages Act ("SCPWA") violations alleged herein, including but not limited to intentionally misclassifying and misrepresenting Plaintiff as an "independent contractor" rather than an employee; refusing to review said characterization; and refusing to pay wages to Plaintiff as required under the SCPWA.

16.    Saad, in his capacity as a Partner/Member/Owner of and Certified Professional Accountant for FSC and RANN, exercises a high level of control over the SCPWA violations herein, including but not limited to intentionally misclassifying and

3

misrepresenting Plaintiff as an "independent contractor" rather than an employee; refusing to review said characterization; and refusing to pay wages to Plaintiff as required under the SCPWA.

17.     McKinney, in his capacity as a Partner/Member/Owner of FSC and RANN, exercises a high level of control over the SCPWA violations herein, including but not limited to intentionally misclassifying and misrepresenting Plaintiff as an "independent contractor" rather than an employee; refusing to review said characterization; and refusing to pay wages to Plaintiff as required under the SCPWA.

18.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, because this action is based, in part, on the Wiretap Act, 18 U.S.C. § 2510 *et seq*.

19.     This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332, because, upon information and belief, diversity of citizenship exists between Plaintiff, one the one hand, and Defendants, on the other, and the amount in controversy exceeds $75,000.00

20.     In addition, this Court has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over Plaintiffs' pendent and supplemental claims, which are brought pursuant to the statutory and common law of the State of South Carolina, because those claims arise out of the same transaction or occurrence as the federal claims alleged herein.

21.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this division.

## STATEMENT OF FACTS

22.    Defendant RANN is in the business of manufacturing wholesale metal machine parts for other manufacturers (such as automotive manufacturers), who use these parts in the assembly of their own products for sale. RANN conducts most of its business in Greenville, Spartanburg and Pickens Counties, South Carolina.

23.    Defendant FSC is in the business of manufacturing wholesale cutting tools for the metalworking industry (primarily aerospace companies) across the United States of America, including Greenville County, South Carolina.

24.    Defendant ARC is in the business of manufacturing wholesale parts to other manufacturers for integration into their machines. ARC conducts its business across the United States, but primarily in Greenville County, South Carolina.

25.    On October 26, 2018, Defendants sent Plaintiff a letter ("First Agreement") stating, "Consider this document an **offer of employment to Mr. Joe Mason by RANN Products LLC, and affiliates**. Position is that of sales engineer. Anticipated start date is December 01, 2018." (Emphasis added.)

26.    The First Agreement set forth the following compensation structure:

| | |
|---|---|
| Starting compensation | $110,000 annual with a review after 90 days |
| Car allowance | $500 per month |
| Reimbursable travel allowance | $1,500 per month maximum (not cumulative, with documentation) |

27.    Despite the clear language of "employment," the First Agreement closed with the following statement:

> Employment status:
>
> Mr. Mason will be considered an **independent contractor** with respect to Rann. He is responsible for paying his own employment taxes and benefits.

(Emphasis added.)

28.     In his role as Sales Engineer, Plaintiff was responsible for securing wholesale orders of RANN, FSC and ARC products for use of those products in the customers' own manufacturing processes. Plaintiff never sold or took orders of RANN, FSC or ARC products to the ultimate consumer or for Plaintiff's own account or for resale.

29.     Defendants purported to contract with Plaintiff to solicit wholesale orders of their products.

30.     Upon information and belief, Defendants purported to call Plaintiff an "independent contractor," not an employee, thereby avoiding their obligations to pay payroll taxes, workers' compensation insurance, health insurance, unemployment insurance, and such other benefits.

31.     Despite designating Plaintiff as an "independent contractor," Defendants exercised significant control over the terms and conditions of his employment in a manner consistent with an employer-employee relationship.

32.     Upon his hiring, Plaintiff was issued a business card displaying FSC's logo and address, his personal cell phone number, FSC's office number, and a company email address: jmason@rannproducts.com.

33.    Defendants also supplied Plaintiff with personal office space within the RANN/FSC facility in Greenville, South Carolina. Each week Plaintiff used this office space about 20-30 hours per week while working exclusively for Defendants.

34.    Defendants paid Plaintiff's cell phone bill, and supplied Plaintiff with a $500.00 per month car allowance.

35.    Plaintiff rigorously trained on Defendants' specific products and manufacturing processes, during which Plaintiff worked with RANN, FSC and ARC employees.

36.    Plaintiff traveled extensively for Defendants making sales across the Southeast of the United States of America, and was reimbursed by Defendants for his travel expenses.

37.    Defendants' customers to whom Plaintiff attempted to make and did make sales of Defendants' products recognized Plaintiff as an employee/agent of Defendants RANN, FSC and ARC.

38.    There was virtually no opportunity for Plaintiff to work for any other companies performing similar services because Defendants expected and required Plaintiff to perform services for Defendants on a full-time basis, and therefore he could not provide any other such services or related services except those provided to or on behalf of Defendants.

39.    Plaintiff effectively worked for Defendants on a full time and continuing basis, between 40 to 60 hours per week; Plaintiff did not sell or advertise his services to the general public or work as a contractor for anyone other than Defendants.

40.    Defendants did not keep records of hours worked by Plaintiff.

41.    Over the course of his employment with Defendants, Defendants never issued Plaintiff either an IRS Form 1099 or W-2.

42. Defendants did not provide notice to Plaintiff explaining the SCPWA or other federal and state labor and employment laws.

43. On or around September 1, 2019, Defendants reduced Plaintiff's base salary to $60,000.00, plus $500.00 car allowance and reimbursable company-related expenses, and entered into the following new commission structure:

- 7.5% Commission on any new customer order;
- 5% Commission on existing customer order.

44. While employed under this structure, Plaintiff closed **at least** the following sales:

| CUSTOMER | SALES | COMMISSION RATE | COMMISSION OWED |
|---|---|---|---|
| M/DS | $1,064,680 | 7.5% | $79,851 |
| CIS | $537,000 | 5% | $26,850 |
| CAI | $33,750 | 5% | $1,687 |
| LM | $2,985 | 7.5% | $224 |
| GS | $5,682 | 5% | $284 |
| SFI | $17,000 | 7.5% | $1,275 |
| | | **KNOWN COMMISSION OWED** | **$110,171** |

45. On August 12, 2020, Plaintiff emailed Mir about the detrimental effects of the pandemic on the sales climate, and reminded him that he had not been paid commissions since August 2019, and needed to be promptly paid such commissions.

46.     Two days after sending this email, on August 14, 2020, Defendants notified Plaintiff that, "Effective September 1st, 2020, your **employment** with FSC/RANN/ARC will be terminated." (Emphasis added.)

47.     Plaintiff requested payment of his commissions from Defendants and their agents numerous times, but to date has not received any portion of his earned commissions.

## FIRST CAUSE OF ACTION: ALL DEFENDANTS
### Violation of South Carolina Payment of Wages Act
### S.C. Code § 41-10-10, et al.

48.     Plaintiff realleges each and every allegation contained above as if repeated here verbatim.

49.     At all relevant times, Defendants have employed Plaintiff within the meaning of the South Carolina Payment of Wages Act, S.C. Code Ann. §§ 41-10-10 to 110 ("SCPWA"). Plaintiff was an "employee" within the meaning of the SCPWA and was not free from the control and direction of Defendants.

50.     Defendants are "employers" as defined by the SCPWA, S.C. Code Ann. § 41-10-10(1), because they employ individuals in the State of South Carolina and, with respect to the individual Defendants, are officers and owners of RANN, FSC and ARC.

51.     Commissions are "wages" as defined in S.C. Code Ann. § 41-10-10(2) of the SCPWA.

52.     Pursuant to S.C. Code Ann. § 41-10-50 of the SCPWA, "[w]hen an employer separates an employee from the payroll for any reason, the employer shall pay all wages due to the employee within forty-eight hours of the time of separation or the next regular payday which may not exceed thirty days."

53.     Defendants, however, did not pay Plaintiff all wages due to him within the statutory timeframe or at any time thereafter, despite numerous attempts by Plaintiff to recover such wages.

54.     As such, Defendants willfully failed to pay Plaintiff wages for all work he performed.

55.     Accordingly, Plaintiff is entitled to receive all compensation of "wages" due and owing to him.

56.     As a direct and proximate result of Defendants' willful conduct, Plaintiff has suffered substantial losses in an amount in excess of $75,000.00, and has been deprived of compensation to which he is entitled, including monetary damages in the amount of three (3) times the amount of his unpaid wages and other remedies afforded under state law, as well as costs and reasonable attorneys' fees pursuant to S.C. Code Ann. § 41-10-80 of the SCPWA.

### SECOND CAUSE OF ACTION: ALL DEFENDANTS
### Wrongful Termination in Violation of Public Policy

57.     Plaintiff realleges each and every allegation contained above as if repeated here verbatim.

58.     The SCPWA, a remedial statute, sets forth the clear public policy of the state of South Carolina with regard to the payment of wages by employers to employees.

59.     In violation of the letter, or at least the implicit clear mandate underlying the SCPWA, Defendants terminated Plaintiff almost immediately after he made a demand for his earned commissions

60.    Defendants are each directly and proximately liable for Defendants' termination as, upon information and belief, it was each and every Defendants' decision to terminate Plaintiff's employment in retaliation for complaints about non-payment of his earned commissions.

61.    Defendants are responsible for damages to Plaintiff, including lost wages, lost benefits, lost earning capacity, stress and anxiety, pain and suffering, and embarrassment and humiliation.

62.    Defendants' tortious conduct was willful, wanton, and reprehensible, as they refused to pay Plaintiff his earned commissions during his employment, terminated him for complaining about same, and then continued to refuse to pay Plaintiff his earned commissions after his termination.

63.    Plaintiff is entitled to an award of punitive damages in addition to his actual losses in an amount in excess of $75,000.00, to discourage Defendants from repeating the behavior they engaged in, and to punish the Defendants for their willful misconduct under the SCPWA.

### THIRD CAUSE OF ACTION: ALL DEFENDANTS
### Violation of S.C. Code § 39-65-20 (In the Alternative)

64.    Plaintiff realleges each and every allegation contained above as if repeated here verbatim.

65.    In the alternative and to the extent the Court finds that Plaintiff was not an employee as defined under the SCPWA, Plaintiff was a "sales representative" pursuant to S.C. Code § 39-65-20(4), because he contracted with Defendants to solicit wholesale orders of

Defendants' products; was compensated in part by commissions; did not place orders or purchase Defendants' products for his own account or for resale; and did not sell or take orders for Defendants' products to the ultimate consumer.

66.    In the alternative and to the extent the Court finds that Defendants were not employers as defined under the SCPWA, Defendants were "principals" for purposes of S.C. Code § 39-65-20(3), because they manufacture, produce, import, or distribute tangible products for wholesale; contracted with Plaintiff (a sales representative) to solicit orders for Defendants' products; and compensated Plaintiff, in part, by commission.

67.    The Second Agreement sets forth the terms under which Plaintiff would be compensated.

68.    Despite the Second Agreement, Defendants refused to pay Plaintiff his earned commissions.

69.    S.C. Code § 39-65-30 states that:

> [a] principal who fails to comply with the provisions of Section 39-65-20 is liable to the sales representative in a civil action for:
>
> (1) all amounts due the sales representative plus punitive damages in an amount not to exceed three times the amount of commissions due the sales representative; and
>
> (2) attorney's fees actually and reasonably incurred by the sales representative in the action and court costs.

70.    Defendants are each directly and proximately liable for the violation of section 39-65-20 as, upon information and belief, it was each and every Defendants' decision to refuse to pay Plaintiff's earned commissions.

71.     Defendants are responsible for punitive damages in the amount of three times Plaintiff's unpaid commissions because its violations caused him emotional distress, financial stress, lost opportunities, and the time value of money.

72.     Defendants' violations were willful, wanton, and reprehensible, as they refused to pay Plaintiff his earned commissions during his employment, terminated him for complaining about same, and then continued to refuse to pay Plaintiff his earned commissions after his termination despite repeated requests for payment.

73.     Plaintiff is entitled to an award of punitive damages in addition to his actual losses to discourage Defendants from repeating the behavior they engaged in, and to punish the Defendants for what they did.

### FOURTH CAUSE OF ACTION: ALL DEFENDANTS
### Violation of the Electronic Communications Privacy Act ("Wiretap Act")
### 18 U.S.C. § 2510 et seq.

74.     Plaintiff realleges each and every allegation contained above as if repeated here verbatim.

75.     In 2020, Defendants or agents thereof acting within the scope of such agency requested access to Plaintiff's personal computer, which he used in the course of conducting business for Defendants, to purportedly install a software update.

76.     Upon information and belief, during this purported "software update," Defendants or agents of Defendants accessed Plaintiff's personal email account and set the account to automatically and surreptitiously forward all of Plaintiff's emails to Defendants or agents of Defendant, without Plaintiff's consent.

77.    On or around June 28, 2021, Defendants or agents of Defendants intercepted electronic communications between Plaintiff and his legal counsel, and between Plaintiff and his financial advisor, by contemporaneously acquiring the contents of electronic communications through the use of an electronic device, namely (upon information and belief) a computer.

78.    Plaintiff learned of the contemporaneous interception of these emails by virtue of an "out of office reply" that he received from an email account associated with FSC employee Jake Axelson (jake@fivestarcarbide.com), despite that Plaintiff had not included Axleson as a recipient on the emails.

79.    Plaintiff was a party to the contemporaneously intercepted electronic communications and also was a person against whom the interceptions were directed, and thus is an aggrieved person under the Wiretap Act, 18 U.S.C. § 2510(11).

80.    On or about June 28, 2021, Defendants or agents therefore intentionally intercepted, endeavored to intercept, or procured other persons to intercept or to endeavor to intercept Plaintiff's electronic communications to and from his personal email address.

81.    Upon information and belief, on and after June 28, 2021, Defendants or agents thereof intentionally and tortiously disclosed, or endeavored to disclose, to other persons the contents of electronic communications between Plaintiff, knowing or having reason to know that the information was obtained through the interception of an electronic communications in violation of the Wiretap Act.

82.    Upon information and belief, on and after June 28, 2021, Defendants or agents of all of the Defendants intentionally and tortiously used, or endeavored to use, the contents

of electronic communications between Plaintiff, knowing or having reason to know that the information was obtained through the interception of electronic communications in violation of the Wiretap Act.

83.    Upon information and belief, the agents of Defendants committed the above acts upon instructions from management, officers, members, owners, or directors of the Defendants, including at least one of the individually named Defendants.

84.    Defendants' agents committed the above acts in the course of and within the scope of their employment and/or agency, upon information and belief, as information technology employees for Defendants.

85.    Plaintiff did not consent to Defendants or their agents intercepting, disclosing, accessing or otherwise using his electronic communications.

86.    Defendants and agents of Defendants intercepted the communications of Plaintiff for the purpose of committing tortious acts in violation of Plaintiff's privacy rights protected by the United States Constitution and the laws of the State of South Carolina as stated in this Complaint.

87.    Under the Wiretap Act, Defendants are civilly liable to Plaintiff for appropriate relief, including:

a. such preliminary and other equitable or declaratory relief as may be appropriate;

b. damages whichever is the greater of--

- the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation; or

- statutory damages of whichever is the greater of $ 100 a day for each day of violation or $10,000;

c. punitive damages; and

d. reasonable attorney's fee and other litigation costs.

88.     All of the Defendants acted with evil motive and intent to spy on Plaintiff and interfere with his privacy and inclusion, including his private future business and employment opportunities and endeavors.  Therefore, Plaintiff is entitled to punitive damages.

89.     Plaintiff requests that this Court enter judgment against Defendants in whatever sum to which he is deemed entitled together with costs, interest, and attorney fees, and issue a preliminary and permanent injunction prohibiting Defendants from continuing to intercept his email communications and mandating that Defendants take any and all steps necessary to discontinue the mechanisms of such interception.

90.     Plaintiff has been prejudiced by Defendants' intentional intrusion into his privacy and therefore Defendants be precluded from using any illegally intercepted documents and communications in this matter for any purpose, including as evidence at trial.

## FIFTH CAUSE OF ACTION: ALL DEFENDANTS
## Violation of the South Carolina Homeland Security Act
## S.C. Code § 17-30-10 et seq.

91.     Plaintiff realleges each and every allegation contained above as if repeated here verbatim.

92.     In 2020, Defendants or agents thereof acting within the scope of their agency requested access to Plaintiff's personal computer, which he used in the course of conducting business for Defendants, to purportedly install a software update.

93.    Upon information and belief, during this purported "software update," Defendants or agents of Defendants accessed Plaintiff's personal email account and set the account to automatically and surreptitiously forward all of Plaintiff's emails to Defendants or agents of Defendant, without Plaintiff's consent.

94.    On or around June 28, 2021, Defendants or agents thereof intercepted electronic communications between Plaintiff and his legal counsel, and between Plaintiff and his financial advisor, by contemporaneously acquiring the contents of electronic communications through the use of an electronic device, namely (upon information and belief) a computer.

95.    Plaintiff learned of the contemporaneous interception of these emails by virtue of an "out of office reply" that he received from an email account associated with FSC employee Jake Axelson (jake@fivestarcarbide.com), despite that Plaintiff had not included Axleson as a recipient on the emails.

96.    Plaintiff was a party to the intercepted electronic communications and also was a person against whom the interception was directed, as such he is an aggrieved person under the South Carolina Homeland Security Act ("SC Wiretap Act"), at S.C. Code § 17-30-10 (10).

97.    Upon information and belief, on or about June 28, 2021, Defendants or agents thereof intentionally intercepted, endeavored to intercept, or procured other persons to intercept or to endeavor to intercept Plaintiff's electronic communications from his personal email address.

98.    Upon information and belief, on or about June 28, 2021, Defendants or agents of all of the Defendants intentionally disclosed, or endeavored to disclose, to other persons the contents of electronic communications between Plaintiff, knowing or having reason to know that the information was obtained through the interception of an electronic communications in violation of the SC Wiretap Act.

99.    Upon information and belief, on or about June 28, 2021, Defendants or agents of all of the Defendants intentionally used, or endeavored to use, the contents of electronic communications between Plaintiff, knowing or having reason to know that the information was obtained through the interception of electronic communications in violation of the SC Wiretap Act.

100.    Upon information and belief, the agents of Defendants committed the above acts upon instructions from the management, officers, trustees, or directors of the Defendants, including at least one of the individually named Defendants.

101.    The agents committed the above acts in the course of and within the scope of their employment with Defendants, upon information and belief, as information technology employees for Defendants.

102.    Plaintiff did not consent to Defendants' or their agents' intercepting, disclosing, or using his electronic communications.

103.    Defendants and agents of Defendants intercepted the communications of Plaintiff for the purpose of committing tortious acts in violation of Plaintiff's privacy rights protected by the United States Constitution and the laws of the State of South Carolina as stated in this Complaint.

104.    Under S.C. Code § 17-30-135, Defendants are civilly liable Plaintiff for appropriate

relief, including:

    a.  preliminary or equitable or declaratory relief as may be appropriate;

    b.  actual damages, but not less than liquidated damages computed at the rate of five
       hundred dollars a day for each day of violation or twenty-five thousand dollars,
       whichever is greater;

    c.  punitive damages; and

    d.  reasonable attorney's fee and other litigation costs reasonably incurred.

105.    All of the Defendants acted with evil motive and intent to spy on Plaintiff and

interfere with his privacy and seclusion, including private future business and employment

opportunities and endeavors.  Therefore, Plaintiff is entitled to punitive damages.

106.    Plaintiff requests that this Court enter judgment against Defendants in whatever sum

to which he is deemed entitled together with costs, interest, and attorney fees, and issue a

preliminary and permanent injunction prohibiting Defendants from continuing to intercept

his email communications and mandating that Defendants take any and all steps necessary

to discontinue the mechanisms of such interception.

107.    Plaintiff has been prejudiced by Defendants' intentional intrusion into his privacy

and therefore Defendants be precluded from using any illegally intercepted documents and

communications in this matter for any purpose, including as evidence at trial.

## SIXTH CAUSE OF ACTION: ALL DEFENDANTS
### Invasion of Privacy/Wrongful Intrusion into Private Affairs

108.    Plaintiff realleges each and every allegation contained above as if repeated here

verbatim.

109.    Upon information and belief, by intentionally intercepting Plaintiff's personal email communications in a surreptitious and calculated manner without Plaintiff's consent, Defendants engaged in conduct that constitutes watching, spying, prying or other similar conduct.

110.    Plaintiff's personal email communications intercepted by Defendants were private and concerned his personal and confidential financial and legal affairs that he rightfully expected would be free from exposure to any third party, including Defendants.

111.    The wrongful intrusion was substantial and unreasonable enough to cause mental injury to Plaintiff (and any person of similar feelings and intelligence in the same circumstances), particularly in light of the alleged amount of time that Defendants surreptitiously intercepted his personal emails and the nature of those emails, including email communications with his attorneys regarding the subject matter of this litigation.

112.    In order to wrongfully intrude into Plaintiff's private affairs by accessing and intercepting his personal emails, Defendants acted in an intentional and calculating manner under the guise of a mandatory work-related "software update."

113.    As a direct and proximate cause of Defendants' conduct, Plaintiff has been damaged in an amount to be proven at trial, including punitive damages.

### **SEVENTH CAUSE OF ACTION: ALL ENTITY DEFENDANTS**
### **Breach of Contract**

114.    Plaintiff restates and realleges the preceding paragraphs of his Complaint as if set forth fully herein.

115.    As discussed above in this Complaint, the First and Second Agreements formed valid and enforceable contracts.

116.    Plaintiff fully performed his obligations under the First and Second Agreements.

117.    Despite Plaintiff's full performance of his contractual obligations, Defendants materially breached their obligations of payment of commissions.

118.    Defendants' refusal to pay Plaintiff the roughly $110,000 in commissions due and owing to him under the Second Agreement constitutes a material breach of the Second Agreement, which directly and proximately damaged Plaintiff in that amount.

119.    Plaintiff is entitled to recover his contractual damages, plus prejudgment interest, from Defendants as a result of the breach.

## EIGHTH CAUSE OF ACTION: ALL ENTITY DEFENDANTS
### Unjust Enrichment/ Quantum Meruit

120.    Plaintiff restates and realleges the preceding paragraphs of his Complaint as if set forth fully herein.

121.    As an alternative to Plaintiff's breach of contract claim, Plaintiff is entitled to recover his unpaid commissions under theories of quantum meruit and unjust enrichment.

122.    Plaintiff conferred a benefit on Defendants by fully closing the agreed-upon sales for Defendants' customers, for which Defendants were presumably paid.

123.    Because Defendants were paid by the customers, Defendants received the benefit of and were enriched by Plaintiff's work and efforts.

124.    Under these circumstances, it would be inequitable and unjust for Defendants to retain the payments from the customers without remitting to Plaintiff his earned

commissions, which represent the value of his services as Sales Engineer with respect to these customers.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief:

1. Order properly classifying Plaintiff as an employee of Defendants and not an independent contractor and all appropriate equitable and legal relief related to the re-classification, including but not limited to any tax-related liability or damages;

2. Monetary judgment in the amount of Plaintiff's actual damages of at least $75,000.00, in an exact amount to be determined at trial, trebled pursuant to the SCPWA, plus his reasonable attorneys' fees and costs;

3. Monetary judgment in the amount of Plaintiff's actual damages and statutory damages of the greater of $100.00 a day for each day of violation or $10,000.00 under the Wiretap Act, plus his reasonable attorneys' fees and costs;

4. Monetary judgment in the amount of Plaintiff's actual damages and statutory damages of the greater of liquidated damages computed at the rate of $500.00 a day for each day of violation or $25,000.00 under the SC Wiretap Act, plus his reasonable attorneys' fees and costs;

5. Monetary judgment in the amount of Plaintiff's actual damages for Defendants' wrongful and retaliatory termination of his employment in violation of public policy;

6. Monetary judgment for punitive damages in an amount to be determined at trial for Defendants' tortious misconduct, wrongful termination of Plaintiff in violation of public policy, and violations of the Wiretap Act and SC Wiretap Act;

7. Monetary judgment for Plaintiff's actual damages that naturally flow from Defendants' material breaches of the Second Agreement, plus prejudgment interest;

8. Injunctions, both preliminary and permanent, prohibiting Defendants from prohibiting Defendants from continuing to intercept his email communications and mandating that Defendants take any and all steps necessary to discontinue the mechanisms of such interception;

9. Granting All other preliminary, equitable, legal or declaratory relief as the Court deems just and proper; and

Respectfully submitted,

Dated: July 19, 2021

/s/ Casey Martens
Casey Martens (#12812)
Molly R. Hamilton Cawley (#11838)
MHC Law, LLC
460 King Street, Suite 200
Charleston, SC  29403
Tel: (843) 225-8651
Casey@mhc-lawfirm.com
Molly@mhc-lawfirm.com

**ATTORNEYS FOR PLAINTIFF**

## **VERIFICATION**

I, Casey Martens, declare as follows:

I am the attorney for Plaintiff and have read the foregoing Complaint with Jury Demand and know the contents thereof.  I am informed and believe that the matters stated therein are true and, on that ground, allege that the matters stated therein are true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 19th day of July, 2021, at Charleston, South Carolina.

/s/ Casey Martens_____
Casey Martens
